UNITED STATES of America, Appellee,

v.

Fernando OSORIO ESTRADA, "a/k/a" "Victor", Defendant-Appellant.

No. 377, Docket 84–1196.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1984.

Decided Dec. 26, 1984.

Kearse, Circuit Judge, concurred and filed an opinion.

**130**

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Lawrence S. Robbins, Asst. U.S. Atty., Brooklyn, N.Y., of counsel, with him on the brief, Allyne R. Ross, Asst. U.S. Atty., Brooklyn, N.Y.), for appellee United States of America.

The Legal Aid Soc., Federal Defender Services Unit (Robin Charlow, Saratoga Springs, N.Y., of counsel), for defendant-appellant.

Before OAKES and KEARSE, Circuit Judges, and POLLACK, Senior District Judge.*

MILTON POLLACK, Senior District Judge.

Defendant Fernando Osorio Estrada ("Osorio") appeals from judgments of conviction entered on jury verdicts after a trial in the District Court for the Eastern District of New York. Osorio was convicted of engaging in a continuing criminal enter-

prise in violation of 21 U.S.C. § 848 (Count 1); conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846 (Count 2); possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and aiding and abetting the same, 18 U.S.C. § 2 (Counts 3, 4, 5, 8, 9, and 10); conspiracy to import cocaine in violation of 21 U.S.C. § 963 (Count 6); and importation of cocaine in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) and aiding and abetting the same, 18 U.S.C. § 2 (Count 7).

Osorio was sentenced on each count to concurrent terms of imprisonment, the longest of which was for a term of 15 years on Count 1, the continuing criminal enterprise count. Separate sentences were imposed on the conspiracy counts, Counts 2 and 6, which were treated as lesser included offenses and the sentences thereon merged into the sentence on Count 1. In addition, the court imposed a special lifetime parole term on Counts 3–5 and 7–10.

On appeal, Osorio challenges: (1) the trial court's supplemental instructions to the jury on the counts charging him with aiding and abetting the violations set forth therein; and (2) the admission of evidence that, during the trial, he had tampered with significant dates set out in his passport and the improper and prejudicial manner in which that evidence was introduced. (3) He also contends that in light of his conviction on the continuing criminal enterprise count, his convictions on the conspiracy and substantive counts should be treated as lesser included offenses and set aside and not merely merged as to sentence in the sentence under 21 U.S.C. § 848.

We agree with Osorio that the supplemental instruction on aiding and abetting was erroneous and prejudicial, and set aside the convictions on Counts 3, 4, 5, 7, 8, 9, and 10. We also agree that the sentences on Counts 2 and 6 should be vacated; however, the convictions thereon are affirmed and should be joined and com-

* The Hon. Milton Pollack, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

bined with the conviction on Count 1, the sentence on which is also affirmed.

## BACKGROUND

This case involved a large scale narcotics scheme for the importation and distribution of cocaine. Osorio was arrested in September 1983, along with Ana Isabel Goez De-Granobles. Both were charged with narcotics conspiracy, with possession of cocaine with intent to distribute, and with aiding and abetting thereof. In January 1984, DeGranobles pleaded guilty to the charge of possession (Count 10).

At the trial of Osorio, the Government presented its case principally through the testimony of four co-conspirators. It also relied on a ledger kept by Osorio with details of numerous transactions, and on proof that Osorio's fingerprints were found on paper that wrapped a portion of the cocaine. Osorio testified on his own behalf and denied any knowledge of, or participation in narcotics conspiracy, drug dealing, or aiding and abetting thereof. He maintained that the ledger reflected legitimate business transactions, and that he touched the wrapping paper in the presence of police only after he was arrested. The evidence establishing Osorio's guilt was ample.

### The Passport Controversy

Osorio had surrendered his passport at the time of his arrest. Thereafter, the Government maintained custody of the document until the first day of trial, when it was given to Osorio to work with while making notes. Only Osorio, his lawyer, and an interpreter had access to it. On its return to the Government, the prosecutor noticed that the passport bore alterations. Two red-stamped dates—relating to times of significant meetings and alleged deals—had been changed with a blue ballpoint pen.

The court received proof that until the trial, there were no alterations of the entries of dates stamped in the passport. A Government agent testified that while the passport was in his possession, he had not made or seen the alterations and had not observed anyone in the U.S. Attorney's office make them. The theory of the evidence was that it reflected consciousness of guilt: i.e., that Osorio altered the dates in order to conceal his whereabouts at times when illegal transactions were discussed or took place.

The prosecutor was permitted to circulate the passport to the jury, with the Court's instruction that "The purpose is to see the blue ink superimposed over the red stamp." In the jury's presence, the prosecutor then asked defense counsel to stipulate that he did not make the marks himself. Defense counsel denied any part in the changes and objected strongly to being asked to make any statement in the presence of the jury. The Court interjected: "Let the record reflect [that defense counsel] states that he did not do it [make the alterations]." A similar stipulation was requested in the presence of the jury concerning the interpreter and again there was elicited a denial by counsel of any alteration by the interpreter.

On cross examination, Osorio firmly denied altering his passport and freely admitted that he was in the United States on the dates indicated by the original, unaltered red entry stamps.

### The Supplemental Instruction

On Counts 3–5 and 7–10, Osorio was charged both as a principal and as an aider and abettor of two individuals who were named in the indictment but were not on trial with Osorio (i.e., one "Trejos" in Counts 3–5, and DeGranobles in Counts 7–10). In its main charge on the Counts, the trial court properly instructed the jury on the elements of aiding and abetting liability; the correctness of these instructions is not challenged.

During the second day of deliberations, the jurors sent a note to the Court, inquiring whether they were required to vote on Osorio alone or must also consider the culpability of the absent co-defendant. After colloquy among the Court and counsel the judge charged as follows:

> To find Osorio Estrada the only defendant guilty you must be satisfied as to

[the elements] beyond a reasonable doubt. [The indictment] charges that he did this together with Trejos but he is not here and is not a defendant.

But obviously you have to consider Trejos as you would any other piece of evidence in the case *but you don't have to be satisfied of Trejos' guilt beyond a reasonable doubt* since he is not a defendant.

Your vote is only on the defendant Fernando Osorio Estrada.

The following colloquy then occurred out of the presence of the jury:

MR. SUSSMAN [Defense Counsel]: Yes, but .when you say they don't have to be persuaded beyond a reasonable doubt if they don't find that how can they find him guilty?

THE COURT: *They can find Trejos guilty by a preponderance of the evidence.* (Emphasis added).

### DISCUSSION

*The Passport Evidence·*

■ The trial judge properly overruled the objection to and admitted the evidence clearly linking the defendant to the changes of dates in his passport during the time period when the tampering took place. We would overturn a trial judge's decision under Fed.R.Evid. 403 only if the judge had acted arbitrarily or irrationally, *see United States v. Jamil,* 707 F.2d 638, 642 (2d Cir. 1983), and in fact we have cautioned trial judges to be sparing in omitting relevant evidence as too prejudicial, *id.* Here, the evidence was strong that the passport was altered while in the custody of the defense, and it was clear that, at least for a time, both the passport and a pen were simultaneously in the defendant's hands.

■ It was improper—and conceded to be so on argument—for the prosecutor to seek to force defense counsel to deny in the jury's presence that he or the interpreter had any part in the tampering. To permit this was erroneous, particularly because it increased the strength of the inference that Osorio had altered the passport. This er-

ror and its apparent effect of creating a conflict of interest does not, however, in the totality of the evidence in this case, rise to the level of a Sixth Amendment violation. The cases relied on by the appellant holding that an attorney's "concern over getting ... into trouble with criminal law enforcement authorities" is an impermissible conflict, *United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984), all concern attorneys who have committed crimes or who are under investigation for crimes. *See id.* at 871 and cases cited therein.

*The Supplemental Instructions*

■ Osorio contends, quite correctly, that an aider and abettor may not be convicted unless the proof establishes that the underlying offense was committed by someone beyond a reasonable doubt. *United States v. Perry,* 643 F.2d 38, 45–6 (2d Cir.), *cert. denied,* 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981); *United States v. Ruffin,* 613 F.2d 408, 412–13 (2d Cir.1979). Here, the supplemental instructions erroneously implied that the jury could convict Osorio of aiding and abetting if it found the principal guilty by only a preponderance of the evidence. The error was immediately called to the court's attention and the court declined to correct it.

Given the possible interpretation of the jury's question as relating to aiding and abetting, and especially since the only evidence of Osorio's possession as charged by Counts 3 and 4 was that he had aided and abetted Trejos, it cannot be said with any certainty that the supplemental charge did not lead the jury to its verdict under an erroneous standard. Counts 7–10 are also implicated since the Government has not pointed to any evidence of Osorio's direct possession (or importation) as charged in those Counts. Perhaps when the jury reached those counts, it applied the supplemental instruction.

■ The presence of an erroneous statement in a supplemental charge does not automatically compel a reversal unless it appears that the defendant may have

been prejudiced by the error. *United States v. Guillette*, 547 F.2d 743, 750 (2d Cir.1976), *cert. denied*, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977). In order to evaluate its likely effect on the jury, the offending statement must be read in the context of the supplemental charge as a whole. *Rock v. Coombe*, 694 F.2d 908, 915 (2d Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 345 (1983).

Thus, we have reversed a conviction where we found strong indications that an erroneous supplemental charge made a special impression on the jury. *Arroyo v. Jones*, 685 F.2d 35 (2d Cir.), *cert. denied*, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982). There, the indications of influence included the jury's evident confusion about the original charge and its rapid verdict after hearing the erroneous charge. In addition, the incorrect instruction was brief and pointed, isolated from the main charge, and the last statement heard by the jury prior to resuming deliberations.

By contrast, we have affirmed a conviction where the circumstances made it extremely unlikely that the jury was influenced by an erroneous charge. For example, *Rock v. Coombe, supra,* the incorrect charge was preceded and followed by proper instructions, and the jury deliberated for several hours after hearing the erroneous statement. In those circumstances, we found no basis for inferring that the jury had seized on the improper charge. 694 F.2d at 917.

This case falls somewhere between *Arroyo v. Jones, supra,* and *Rock v. Coombe, supra,* both of which involved a *Sandstrom* charge, i.e., a charge that "people are presumed to intend the natural, probable, and logical consequence of their acts."[†] The erroneous charge here had an effect similar to a *Sandstrom* charge since it lowered the burden of proof. But its im-

pact on the jury is neither as clearcut as in *Arroyo* nor as unlikely as in *Rock*.

On the one hand, the jury's question with respect to the counts that relied in part on aiding and abetting (whether they had "to consider" the principal) can be read as expressing confusion only about what decisions they had to make, not about the elements of aiding and abetting liability. Moreover, the charge did not lead to a suspiciously quick verdict.

On the other hand, however, the jury could have been asking whether it should consider only the acts of Osorio or whether it should consider the acts of the principal as well in evaluating liability if based on aiding and abetting. Their question indicated that they had forgotten the original charge. In addition, they heard the erroneous instruction for the first time in the supplemental charge, and the judge did not qualify the statement—even though its improper implications were immediately pointed out to him—because he thought it was correct.

█ On balance, this case is closer to *Arroyo* than it is to *Rock*. Accordingly, we reverse the convictions on all of the counts to which the supplemental instruction could apply, i.e., Counts 3, 4, 5, 7, 8, 9 and 10.

*Lesser Included Offenses*

Osorio contends that his sentences and convictions for the conspiracy offenses should be vacated as lesser included offenses in the conviction on the continuing criminal enterprise charge. At the sentencing, the trial Judge imposed sentences in part as follows:

"... on count one the defendant will be imprisoned for a term of 15 years. On counts two and six for a term of 15 years
...
All terms are concurrent.

† In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Supreme Court held that such an instruction unconstitutionally

shifted to the defendant the burden of proof on the issue of intent.

The sentence imposed on counts two and six are merged into the sentence on count one."

■ The law in this Circuit is that a conviction on a lesser included offense may not stand as a separate conviction. Two Second Circuit decisions hold that when a defendant is convicted of a lesser included offense, the proper course of action is to vacate the conviction as well as the sentence. *United States v. Rosenthal,* 454 F.2d 1252, 1255 (2d Cir.), *cert. denied,* 406 U.S. 931, 92 S.Ct. 1801, 32 L.Ed.2d 134 (1972); *United States v. Slutsky,* 487 F.2d 832 (2d Cir.1973), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974).

Decisions by the Fifth, Seventh, and Ninth Circuits are in accord. *See e.g., United States v. Jefferson,* 714 F.2d 689 (7th Cir.1983); *United States v. Smith,* 690 F.2d 748 (9th Cir.1982), *cert. denied,* 460 U.S. 1041, 103 S.Ct. 1435, 75 L.Ed.2d 793 (1983); *United States v. Buckley,* 586 F.2d 498 (5th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 242 (1979); *United States v. Johnson,* 575 F.2d 1347 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979).

■ The rationale for vacating a conviction as well as the sentence is that a conviction alone—even without a sentence—may entail adverse "collateral consequences." *See Rosenthal,* 454 F.2d at 1255 n. 2; *Buckley,* 586 F.2d at 504–05.

However, in two of its more recent decisions, this Court vacated only the sentence on the lesser included offense but allowed the conviction to remain undisturbed. *United States v. Sperling,* 560 F.2d 1050 (2d Cir.1977); *United States v. Mourad,* 729 F.2d 195, 202 (2d Cir.), *petition for cert. filed,* 52 U.S.L.W. 3922 (U.S. June 26, 1984) (No. 83–2067) ("We therefore vacate the sentences imposed on Mourad on the conspiracy counts and remand his case solely for the purpose of reconsideration of his 848 sentence.")

It is to be noted, however, that in *Sperling,* only the sentencing issue was presented by the defendant; he did not seek to have his conviction on the lesser offense vacated. This Court remanded the case exclusively for sentencing purposes, noting that the conviction on the conspiracy count "remains unaffected." 560 F.2d at 1060. Similarly, in *Mourad,* the Court vacated only the sentence but let the record of a conspiracy conviction stand. 729 F.2d at 203–04. Even though the Court allowed the conviction to stand separately, it noted in a footnote that:

"Since the law does not permit conviction for a lesser included offense if proof of the greater offense necessarily involves proof of the lesser, *Blockburger v. United States,* 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306] (1932); *Gavieres v. United States,* 220 U.S. 338 [31 S.Ct. 421, 55 L.Ed. 489] (1911), a conviction and sentence imposed for a lesser included offense must be vacated when there has been a conviction for the greater offense. *United States v. Rosenthal,* 454 F.2d 1252, 1255 (2d Cir.), *cert. denied,* 406 U.S. 931 [92 S.Ct. 1801, 32 L.Ed.2d 134] (1972)."

*Id.* at 202 n. 8.

The Court of Appeals for the Third Circuit has taken the position that a conviction for a lesser included offense should be allowed to stand even though the sentence thereon is vacated. *United States v. Gomez,* 593 F.2d 210 (3d Cir.) (en banc), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979). The Court reasoned that if the conviction on the lesser offense were vacated, a defendant might avoid all punishment if an appellate court later reversed the single conviction on the compound offense but would have upheld the conviction on the lesser count.

A similar rationale underlies the decision in *Sperling* to allow the conviction on the lesser count to stand. The Court explained that: "... in the unlikely event that sometime in the future his conviction on Count Two shall be overturned, the sentence imposed on the unaffected conviction on Count One is to be reinstated." 560 F.2d at 1060.

Thus, to meet the rulings in this Circuit, Osorio's convictions on the lesser offenses should be combined with the conviction on the greater offense, i.e., the 848 count. Such a disposition takes account of the concerns expressed in the two lines of cases discussed above.

Under this method, the convictions on the lesser counts become combined with that on the compound offense and would *not* be merged out of existence. This leaves the part of the conviction on the lesser offense unaffected should the compound offense be invalidated as a matter of law. The convictions on the lesser offenses would not exist as separate convictions so long as the § 848 conviction remained in place. Thus, the risk of any collateral consequences that separate convictions may entail would be eliminated and satisfy the concern expressed in *Rosenthal* and *Buckley* that a defendant not be prejudiced by outstanding separate convictions on lesser included offenses.

Should the conviction on Count 1 be overturned as a matter of law, the defendant is not entitled to a new trial on Counts 2 and 6 but only to a resentencing.

We have considered all of Osorio's other contentions and find them without merit.

For the foregoing reasons, we reverse the convictions on Counts 3, 4, 5, 7, 8, 9, and 10 and order a new trial thereon; and vacate the sentences on Counts 2 and 6 and join and combine the convictions thereon with the conviction on Count 1. The mandate shall issue accordingly.

KEARSE, Circuit Judge, concurring:

I concur in most of the Court's opinion. It is not clear to me, however, what the precise effect is of "join[ing]" or "combin[ing]" the convictions on Counts 2 and 6 "with the conviction on Count 1." *See* Majority opinion, *ante,* at 130, 135.

Viewing Counts 2 and 6, which charged conspiracies in violation of 21 U.S.C. §§ 846 and 963 (1982), respectively, as lesser-included offenses within Count 1, which charged a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1982), I believe it would have been appropriate to vacate the convictions on the two lesser-included offenses, on the condition that the convictions on those offenses would be reinstated in the event that the conviction on the greater offense, Count 1, were ever overturned for reasons not affecting the validity of the convictions on Counts 2 and 6. The convictions on lesser-included offenses were vacated in *United States v. Slutsky,* 487 F.2d 832 (2d Cir.1973), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974), and *United States v. Rosenthal,* 454 F.2d 1252, 1255 (2d Cir.), *cert. denied,* 406 U.S. 931, 92 S.Ct. 1801, 32 L.Ed.2d 134 (1972); and this was the course prescribed in *United States v. Mourad,* 729 F.2d 195, 202 n. 8 (2d Cir.), *petition for cert. filed,* 52 U.S.L.W. 3922 (U.S. June 26, 1984) (No. 83–2067), though not followed, *see id.* at 202 (vacating only the lesser count sentences, not the convictions).

The majority, however, elects to "join" or "combine" the convictions on the lesser offenses with the conviction on Count 1, stating that the convictions on the lesser counts "would *not* be merged out of existence," but "would not exist as separate convictions" as long as the conviction on Count 1 was not disturbed. Majority opinion, *ante,* at 135 (emphasis in original). I do not know what this means ontologically, but I concur in the judgment in the hope that its import is that the convictions on the lesser-included offenses have ceased, in light of the conviction on the greater offense, to be a basis upon which collateral consequences, such as more severe parole treatment, may follow.